UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES R. KOWALSKE,

                 Plaintiff,

   v.                                         **DECISION AND ORDER**
                                                         10-CV-339S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

      1.      Plaintiff Charles R. Kowalske challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since August 6, 2004 due to flu-like symptoms associated with hepatitis C treatment. (R. at 76, 87, 89, 606.)[1] Plaintiff contends that his impairments render him unable to work and, therefore, argues that he is entitled to disability benefits under the Act.

      2.      Plaintiff first filed an application for Supplemental Security Income ("SSI") on April 6, 2005. (Id. at 44.) That application was initially denied on August 13, 2005, after which he requested a hearing before an ALJ. (See id. at 44.) That hearing took place before ALJ Robert T. Harvey on January 8, 2008. (Id. at 575-601.) The ALJ considered Plaintiff's case *de novo*, and on March 28, 2008, issued a decision denying Plaintiff's application for benefits. (Id. at 25-36.) Plaintiff requested review, and on June 20, 2008, the Appeals Council vacated the decision and remanded the case to the ALJ for a new hearing and decision. (Id. at 37-43.) A second hearing took place before ALJ Harvey on January 15, 2009. (Id. at 602-25.) The ALJ issued a second decision on June 1, 2009

---

[1] Citations to the underlying administrative record are designated as "R."

again denying Plaintiff's claim, as well as Plaintiff's claim under a May 14, 2008 application, which was consolidated and adjudicated with the claim on remand. (Id. at 10-24, 604.) Plaiintiff requested review, but this time the Appeals Council denied his request. (Id. at 6-9, 564-67, 569.) Plaintiff filed the current civil action challenging Defendant's final decision on April 26, 2010.[2]

3. The parties subsequently filed Motions for Judgment on the Pleadings. Defendant filed its motion on October 12, 2010. Plaintiff followed suit on May 28, 2011.[3] For the following reasons, the parties' motions are denied, and this matter is remanded.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60,

---

[2] The ALJ's decision became the Commissioner's final decision in this matter after the Appeals Council denied Plaintiff's request for review.

[3] This Court, after granting an extension of time to file dispositive motions, ordered all such motions submitted by October 12, 2010. Responses were due by November 11, 2010. The Court notes that Plaintiff's response was filed on November 14, 2010 and is thus untimely. Similarly, Plaintiff filed his Motion for Judgment on the Pleadings on May 28, 2011, and then filed an Amended Motion seeking the same relief, later that day. Plaintiff's motion is thus also untimely. Concluding that the ALJ's decision should be remanded for further consideration this Court does not find that Plaintiff's delay warrants granting Defendant's motion as unopposed.

62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable

>to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts:  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since August 6, 2004 (R. at 15); (2) Plaintiff's "alcohol abuse, depressive disorder, hepatitis C, status post partial hepatomegaly, cholecystectomy, abdominal pain and low back pain" are severe impairments (id. at 16); (3) whether or not Plaintiff stopped his substance abuse, his impairments or combination of impairments do not meet 20 C.F.R. § 404.1520(d); (4) if Plaintiff stopped the substance abuse, he would retain the residual functional capacity

to do light work with various limitations (id. at 20);[4] (5) although Plaintiff is unable to perform his past relevant work (id. at 22), based on his age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that he could perform if he discontinued his substance abuse. (Id. at 23). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from August 6, 2004, through June 1, 2009, the date of the ALJ's decision. (Id.)

10.  Plaintiff's sole challenge appears to be that the ALJ erred in finding Plaintiff had a substance abuse problem. According to Plaintiff, his medical issues are sufficient to show his complete disability without substance abuse constituting a contributing factor. Plaintiff concedes that alcohol "may be a problem," but argues that he "will not be cured and able to work if he never drinks alcohol again." (Docket No. 11, p.6.)

Defendant has not challenged the ALJ's initial determination that Plaintiff would be disabled if his substance abuse problems were made part of the analysis. Nor has Defendant challenged the ALJ's severity determination as to Plaintiff's remaining impairments. The only issue then is whether those impairments would satisfy the criteria at step 4.

Under the Act, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

---

[4] If Plaintiff stopped his substance abuse, he would have the residual functional capacity to lift/carry/push 20 pounds occasionally and 10 pounds frequently, sit 2 hours and stand/walk 6 hours in an 8 hour day. (R. at 20.) He would have occasional limitations in crawling, kneeling, bending, stooping, squatting, and balancing. (Id.) Additionally, he would have occasional limitations in understanding, remembering, and carrying out detailed instructions. (Id.) Plaintiff could not work in areas with unprotected heights or around heavy, moving, or dangerous machinery. (Id.) He could not do any climbing of ropes, ladders, or scaffolds. Plaintiff could only work in a job with up to a moderate amount of stress. (Id.)

5

The relevant inquiry in determining whether substance abuse is a "material contributing factor" is whether an individual would still be disabled if he were to stop using alcohol and/or drugs. See Johnson v. Astrue, 493 F. Supp. 2d 652, 659 (W.D.N.Y. 2007).

Here, there is little question that Plaintiff has a substance abuse problem. Contrary to Plaintiff's arguments, there is substantial evidence in the record indicating that Plaintiff was abusing alcohol at or around the time the ALJ rendered his decision. Although Plaintiff claims that he was never labeled an alcoholic (Docket No. 11, 5), Dr. Kathleen Kelley, a consultative physician, diagnosed him with alcoholism. (R. at 533.) This diagnosis is supported by Plaintiff's testimony. Plaintiff admitted to drinking alcohol on a daily basis. (Id. at 530.) Plaintiff did in fact have a DUI. (Id. at 544.) A history of alcohol abuse was also noted in an initial psychiatric assessment on July 28, 2007. (Id. at 557.) Before that, Plaintiff struggled with substance abuse even while receiving critical medical care that was adversely susceptible to alcohol. Despite admonishments, Plaintiff consumed alcohol on numerous occasions while receiving treatment. (See id. at 233, 245, 247, 249.) Nurse Jenifer L. Ridler, one of Plaintiff's treating nurses, went so far as to advise against prescribing Plaintiff certain pain medications because "[h]e already had a substance abuse problem with [alcohol]." (Id. at 233.)

11.     Having found that substantial medical evidence supports the ALJ's finding of substance abuse, the ALJ was next required to determine whether this abuse constituted a contributing factor to the determination of disability. The "key factor" to be considered is whether Plaintiff would still be disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). To do so, the ALJ identifies which mental and physical limitations would remain if alcohol use were stopped, and then makes a final determination on disability in light of the remaining limitations. See id. § 404.1535(b)(2).

Here, the ALJ found that if Plaintiff stopped consuming alcohol he would no longer have "occasional limitations in the ability to perform certain activities within a schedule, maintain regular attendance and complete a normal workday and workweek." (R. at 18.) Were Plaintiff to stop his substance abuse, he would also not have occasional limitations in his ability to maintain attention and concentration for extended periods, interact appropriately with the general public, accept instruction and respond appropriately to criticism from supervisors, and get along with coworkers and peers. He would also then respond appropriately to changes in the work setting, and sustain a job with up to a moderate amount of stress. (Id. at 18, 20.) Freed from the additional impairments imposed by his substance abuse, Plaintiff would then be qualified to pursue a limited range of light work for which there existed a significant number of jobs in the national economy. Plaintiff could thus not be termed disabled.

12.   Plaintiff bears the burden of proving that his alcoholism was not a contributing factor. See White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 173 (W.D.N.Y. 2004); Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007) (listing circuits placing burden on plaintiff). Plaintiff seeks to meet this burden by arguing that the ALJ did not sufficiently consider the the findings of the Veterans Administration Medical Center ("VA") or the evaluation by Dr. Thomas Ryan on May 9, 2005.

13.   The ALJ's first decision in this case was remanded in part for failure to consider the decision by the VA, which stated that Plaintiff was 100 percent disabled. (R. at 39-40.) On remand, the ALJ declined to give the VA's decision dated May 11, 2006 significant weight because it did not consider the vocational factors considered as part of a determination on social security benefits. "In the Second Circuit, the VA's determination of disability is generally entitled to 'some weight,' though it is not dispositive on the issue of whether a

claimant is disabled for the purpose of Social Security benefits." Machia v. Astrue, 670 F. Supp. 2d 326, 334-35 (D. Vt. 2009) (quoting Hankerson v. Harris, 636 F.2d 893, 896-97 (2d Cir. 1980)). Here, the ALJ did not give significant weight to the VA's decision because it applied different criteria than are applied to evaluate social security benefits. But this explanation merely restates why decisions by the VA are not given dispositive weight. As a result, the ALJ's explanation "accomplishes little here, since [plaintiff] argues that the ALJ should have given 'some weight' to the VA decisions, not that the VA decisions are outcome determinative." See id. Although the ALJ is correct that the VA's determination of disability is not a vocational determination, it nevertheless speaks to Plaintiff's residual functional capacity and the ALJ was required to give it some weight and explain why it was not entitled to greater consideration. Here, it is unclear that the ALJ did so. See SSR 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006) ("[B]ecause other agencies may apply different rules and standards . . . this may limit the relevance of a determination of disability by another agency. However, *the adjudicator should explain the consideration given to these decisions* . . . .") Moreover, the ALJ's explicit consideration of the decision does not cure this ambiguity. See Machia, 670 F. Supp. 2d at 336 (remand not avoidable by ALJ considering evidence on which VA decision based because the "VA determination is itself entitled to at least some evidentiary weight *in addition* to the other record evidence"). Accordingly, remand on this point is appropriate.

14.     The ALJ's first decision was also remanded in part for failure to properly consider opinions from acceptable medical sources. As to Dr. Ryan's evaluation, this Court notes that the ALJ did not specifically address that doctor's psychiatric findings. Those findings were consistent with "psychiatric problems," which could "significantly interfere with claimant's ability to function on a daily basis." (Id. at 163-64.) Those findings also noted

that Plaintiff's dysphoric mood, insomnia, and irritability could be related to alcohol or drug dependence with withdrawal. (Id.) However, the ALJ was clear in what weight he accorded other physicians' reports. He explicitly gave significant weight to the exertional limitations analysis of Dr. Kelly's report of February 8, 2008. He did not give great weight to her analysis as to Plaintiff's non-exertional limitations. The ALJ also gave very little weight to the October 5, 2006 opinion of Dr. Diana Vakante-Jankovic because it failed to provide relevant evidence to support the opinion, particularly medical signs and symptoms.

The ALJ also made an appropriate credibility determination as to Plaintiff's own testimony. The ALJ properly declined to give any credibility to Plaintiff's testimony citing seven separate grounds in support. These can be summarized briefly as all relating to Plaintiff's drinking, as well as Plaintiff's inconsistent descriptions of his alcoholic intake. (Id. at 21.) For example, while he admitted drinking alcohol to Dr. Kelly, Plaintiff reversed course in his examination before Dr. Renee Baskin the same day, claiming that he "has maintained abstinence from alcohol since November 2005." (Id. at 543.) The ALJ was therefore not required to believe Plaintiff's description of the intensity of his symptoms.

15. Nevertheless, this case must also be remanded for further consideration of the ALJ's evaluation of the medical opinions. "[A]n ALJ's [residual functional capacity] assessment is a medical determination that must be based on probative medical evidence of record . . . . [a]ccordingly, an ALJ may not substitute his own judgment for competent medical opinion." Lewis v. Comm'r of Soc. Sec., No. 6:00 CV 1225 GLS, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005). Various ambiguities prevent this Court from ascertaining whether the ALJ's decision is supported by substantial evidence. The ALJ states that "[i]f the claimant stopped abusing alcohol, his mental functioning would improve significantly." (R. at 21.) The ALJ does not elaborate on what opinion he relies on for this

9

statement. As previously observed, the ALJ gave significant weight to Dr. Kelly's opinion as to Plaintiff's exertional limitations, but not his non-exertional limitations. (Id. at 22.) He gave little or no weight to the opinions of Dr. Baskin, the VA, or Dr. Vakante-Jankovic. The only medical evidence the ALJ appears to have relied on for determining Plaintiff's non-exertional limitations was provided by Dr. John Schwab. Dr. Schwab evaluated Plaintiff and did not assign any limitations. (Id. at 21.) Aside from the fact that this doctor's opinion dates from the middle of 2005, and is an internal medicine examination, as opposed to the psychiatric evaluation conducted by Dr. Ryan that same day, the ALJ mentions Dr. Schwab only in the course of discussing Plaintiff's credibility. It is therefore unclear whether Dr. Schwab's evaluation is intended to support the ALJ's description of Plaintiff's non-exertional limitations, including as they relate to substance abuse. Given the significant differences in the limitations the ALJ ascribed to Plaintiff with, and without, substance abuse, it is necessary for this ambiguity to be resolved in order for this Court to determine whether substantial evidence supports the ALJ's determination.

This Court has reviewed the record for clarification but found nothing further to assist it. Dr. Renee Baskin concluded that Plaintiff had difficulty maintaining a regular schedule, but, as the ALJ correctly observed, Dr. Renee did not know about Plaintiff's alcoholism. (Id. at 545.) Dr. Kelly did know about Plaintiff's alcoholism, having diagnosed Plaintiff with it, as well as major depressive disorder, with anxiety and panic attacks, but the ALJ gave little weight to her evaluation of Plaintiff's non-exertional limitations for reasons unknown. (Id. at 532-33.)

Nor does the remainder of the decision help identify the medical evidentiary support underlying the ALJ's observation. The ALJ determined that "[a]bsent any laboratory reports to confirm the absence of alcohol abuse, in addition to the claimant not participating

in an alcohol abuse rehabilitation/detoxification program, the [ALJ] is not convinced that the claimant has stopped abusing alcohol." However, Plaintiff is not required to show that he stopped abusing alcohol. Johnson, 493 F. Supp. 2d at 659. Rather, he need only show that even if his substance abuse were discounted that his other impairments would still render him disabled.

16. This Court also notes that Plaintiff's depression persisted during a time period when Plaintiff had in fact abstained from alcohol usage. On November 8, 2006 Plaintiff was listed as having had an alcohol dependence, but had not consumed alcohol for almost 12 months. (Id. at 201-02.) Despite abstaining from alcohol, Plaintiff's depressive disorder remained. On June 8, 2006, Plaintiff's medical records showed mild to moderate levels of depression. (Id. at 205.) On March 1, 2006 and November 30, 2005, Plaintiff's depression was labeled moderate. (Id. at 211, 219.) Medical records from that time describe this mental illness as remaining a "prominent problem." (Id. at 214.) The ALJ himself found that Plaintiff's depressive disorder was severe. (Id. at 16.) This is sufficient to warrant remand. See Hernandez v. Astrue, No. 10-CV-0234 (KAM), 2011 WL 1630847, at *13-*14 (E.D.N.Y. Apr. 29, 2011) (remanding case where multiple diagnoses of severe mental impairments during period of sobriety made it "unclear how the ALJ concluded that plaintiff's alcohol abuse was a material contributing factor to plaintiff's mental impairments"); MacLeay v. Comm'r of Soc. Sec., No. 08-CV-0766, 2010 WL 2545778, at *6 (W.D.N.Y. June 18, 2010) (noting lack of evidence that Plaintiff had significant depressive symptoms absent alcohol abuse).

17. The ALJ's statement that "claimant's interferon treatment was a failure because of his continued alcohol abuse" is also unclear for two reasons. (R. at 21.) First, it is unclear why this statement is significant. The ALJ determined that even had Plaintiff stopped his

substance abuse, the remaining limitations, including presumably the hepatitis C and depressive disorder, would still constitute severe impairments, resulting in various exertional limitations already detailed. (Id. at 19-20.) As a result, it is unclear whether the ALJ means that had the interferon treatment been successful Plaintiff would not now be subject to various additional impairment, or whether this evidences the existence of a substance abuse problem. Regardless, the past failure of the interferon treatment would not affect his disabilities if he were to overcome his alcoholism now.

Second, the ALJ does not make clear what medical opinion supports his statement. Although he points to entries in the medical record that alcohol use during interferon treatment is counterproductive, the success rate for such a treatment is listed in the record as, at best, between 40-45% and, at worse, as less than 40% chance. (Id. at 220, 252.) Nothing supports an inference that a treatment with a success rate less than 50% would have succeeded had Plaintiff successfully abstained from alcohol.

18. After carefully examining the administrative record, this Court finds that it cannot evaluate whether the ALJ's decision was supported by substantial evidence. The ALJ has not clearly ascribed appropriate weight to the VA's decision. The ALJ has also failed to unambiguously identify the medical evidence supporting Plaintiff's non-exertional limitations, absent substance abuse. On remand, the ALJ should detail the weight given the VA's decision, and substantively discuss its findings. On remand, the ALJ should also clarify the source of Plaintiff's non-exertional limitations. Finally, the ALJ should make clear the specific medical opinions being relied upon in support of this finding.

19. Accordingly, for the reasons stated above, this matter is remanded to the ALJ for further consideration of Plaintiff's residual functional capacity.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Plaintiff's Amended Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: December 30, 2011
      Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
